**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

PAUL R. WALLACE
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Date Submitted: April 4, 2022
Date Decided: April 4, 2022

Kenneth J. Nachbar, Esq.
Elizabeth A. Mullin, Esq.
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Suite 1200
Wilmington, Delaware 19801

J. Matthew Belger, Esq.
Clarissa R. Chenoweth-Shook, Esq.
Charles R. Hallinan, Esq.
POTTER ANDERSON & CORROON LLP
Hercules Plaza, Sixth Floor
Wilmington, Delaware 19801    `

Greg Shinall, Esq.
SPERLING & SLATER, P.C.
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603

Maria Aprile Sawczuk, Esq.
GOLDSTEIN & MCCLINTOCK, LLLP
501 Silverside Road, Suite 65
Wilmington, Delaware 19801

Marc E. Rosenthal, Esq.
PROSKAUER ROSE LLP
70 West Madison, Suite 3800
Chicago, Illinois 60602

B. Lane Hasler, Esq.
33 North Dearborn, Suite 2330
Chicago, Illinois 60602

RE: *Sperling & Slater v. SilkRoad, Inc. and SilkRoad Equity, LLC*
C.A. No. N21C-11-152-PRW (CCLD)
Third-Party Defendant, Thomas A. DePasquale Management Trust's
Motion to Intervene and Motion to Stay Interpleader Order

Dear Counsel:

This Letter Order resolves a few pending applications in this matter, the last of which were heard by the Court today. There is no short version of these parties' saga—at bottom, it's a pitched priority fight among judgment creditors emanating from litigation that's been travelling back and forth between Illinois and Delaware.

## I.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.   THE PARTIES AND THEIR PREVIOUS LITIGATION

To properly determine each party's priority and rights in the funds disputed in *this* case, a detailed history of the parties' long-battled and still ongoing litigation in Illinois is critical.

The Plaintiff, Sperling & Slater, P.C. ("Sperling") is a Chicago, Illinois-based law firm.[2]  Andrew Filipowski is Sperling's longtime client.[3]  Defendant SilkRoad Equity, LLC ("SRE") is a Delaware limited liability company[4] of which Mr. Filipowski is a founder, member and manager.[5]

Third-Party Defendant/Proposed Intervenor, the Thomas A. Depasquale Management Trust ("Trust") is a judgment creditor of Mr. Filipowski.  In a consolidated creditors' claims action in the Circuit Court of Cook County, Illinois, the Trust purchased and was substituted lien holder of various judicial liens and

---

[1]   Much of this factual and procedural history has been drawn from the parties' exhibits rather than their pleadings.  The Court was forced to do so because it found each party, when telling its own story, either omitted key facts or would drift to distracting, irrelevant points.  Below, the Court imposes a solution to that problem for here on.

[2]   Compl. ¶ 2, *Sperling & Slater v. SilkRoad, Inc. and SilkRoad Equity, LLC,* C.A. No. N21C-11-152-PRW CCLD (Nov. 17, 2021) (D.I. 1).

[3]   Trust's Mot. to Stay Interpleader Order, Ex. B at 1 (Sperling's Amended Verified Notice of Adverse Claims, filed in the Circuit Court of Cook County, Illinois, Case Nos. 14 L 050833 and 15 L 050280 (hereinafter "Sperling's Adverse Claims")), *Sperling & Slater v. SilkRoad, Inc. and SilkRoad Equity, LLC,* C.A. No. N21C-11-152-PRW CCLD (Mar. 15, 2022) (D.I. 19).

[4]   Compl. ¶ 4.

[5]   *Id.* ¶ 9; Mr. Filipowski has also been joined as a Third-Party Defendant by SRI.  *See* Order Granting SRI's Motion for Interpleader, *Sperling & Slater v. SilkRoad, Inc. and SilkRoad Equity, LLC,* C.A. No. N21C-11-152-PRW CCLD (Feb. 16, 2022) (D.I. 12).

charging orders against Mr. Filipowski personally.[6]

### 1. *Sperling's Representation of Mr. Filipowski and the First Set of Funds*

In 2010, Sperling represented Mr. Filipowski on a contingent-fee basis to pursue claims against BDO, USA.[7] That action settled in August 2012, with BDO paying Mr. Filipowski $13M in four annual installments of $3.25M.[8] In September 2012, Sperling perfected an Illinois statutory lien in the proceeds—43% of the total settlement—for its legal fees in the matter.[9] Sperling received the first three installments from BDO, covering a portion of its own bill from each installment before turning over the remainder to Mr. Filipowsi.[10]

In 2014, Sperling again represented Mr. Filipowski, as well as SRE and SRE members against Defendant SilkRoad, Inc. ("SRI") in our Court of Chancery.[11] That litigation resolved in 2015 by way of Settlement Agreement, whereby SRI issued a Promissory Note to SRE.[12] The principal amount of the SRI Note is $2.4 million, payable, subject to other terms and conditions, in ten years or upon a change in control of SRI.[13]

---

[6] Trust's Mot. to Stay ¶¶ 1-14.

[7] *Id.*, Ex. B, Sperling's Adverse Claims at 1-2.

[8] *Id.* at 2.

[9] *Id.* The statutory lien was entered pursuant to the Illinois Attorneys' Lien Act, 770 ILCS 5/1.

[10] *Id.*

[11] Compl. ¶ 5. That litigation is captioned *Andrew J. Filipowski, et al. v. SilkRoad, Inc., et al.*, C.A. No. 9890-VCL (Del. Ch.). SRI is a Delaware corporation. *Id.* ¶ 4.

[12] *Id.* ¶ 6.

[13] *Id.*

Important here, however, is that Sperling only agreed to represent Mr. Filipowski in the Chancery litigation (and in other suits) based on Mr. Filipowski's agreement to pay the firm's fees from the BDO settlement distributions.[14]  Sperling's fees for its representation in the Chancery litigation, as well as for other, unrelated litigation, was covered by the second and third $3.25M BDO annual payments.[15]

### 2.  *The 2016 Distribution Agreement Between Sperling and the Trust*

Between 2013 and 2015, judgment creditors of Mr. Filipowski—creditors' interests now owned by the Trust—sought to impose judicial liens on the fourth and final installment of the BDO funds sitting in Sperling's escrow account.[16]  Sperling responded by filing a Notice of Adverse Claims in the Cook County Circuit Court asserting a lien on Mr. Filipowski's assets.[17]  The Trust objected to Sperling's action.[18]

In 2016, Sperling and the Trust ultimately settled Sperling's claims, agreeing to distribute the fourth BDO payment held in Sperling's escrow account.[19]  Under

---

[14]  *See* Sperling's Adverse Claims at 1-2, 8 ("Without the promise of payment from a specific and identifiable source, Sperling would not have [continued] additional work for Filipowski.").

[15]  *Id.* at 8.

[16]  *Id.* at 5.

[17]  Trust's Mot. to Stay ¶ 15; *see also id.*, Ex. B, Sperling's Adverse Claims.

[18]  Trust's Mot. to Stay ¶ 16.

[19]  Compl. ¶ 10; *see also id.*, Ex. 4 at ¶ 1(d) (Distribution Agreement); Trust's Mot. to Stay, Ex. C (Order Dismissing Sperling Adverse Claims pursuant to a "Distribution Agreement," *Wells Fargo Bank v. Andrew Filipowski*, Circuit Court of Cook County, Illinois, Case No. 14 L 050758).

their "Distribution Agreement," Sperling received a total of $2.2M that satisfied Mr. Filipowski's outstanding attorney's fees related to the BDO representation as well as for other matters.[20]  After covering those fees, $372,395 remained, and Sperling applied those funds to the still outstanding attorney's fees from legal services rendered in the SRI litigation.[21]

The Distribution Agreement "expressly preserved all parties' rights to the SRI Note proceeds . . . because at the time the parties did not know if there would be any proceeds from the SRI Note" when it became payable.[22]  The specific provision preserving the parties' rights related to the SRI-Delaware litigation provides, in its entirety, as follows:

> *The SilkRoad, Inc. Delaware Settlement*. The Parties agree that the SilkRoad, Inc. Delaware Settlement and any proceeds therefrom remain subject to all liens and claims by the DePasquale Trust, Wells Fargo and BankFinancial, and liens and claims by Sperling on account of the Sperling SilkRoad, Inc. Liens and any other liens and claims that Sperling has or may have with respect to the amounts owed to SRE and/or the other beneficiaries of the SilkRoad, Inc. Delaware Settlement, limited to an amount not to exceed $729,914 (after the distribution of the BDO Escrow contemplated in paragraph 1.a. herein). *Subject to the terms set forth in Section 2.a. below, Sperling will waive and release all liens upon and claims to any portion of the SilkRoad, Inc. Delaware Settlement exceeding its claim of $729,914* (after the distribution of the BDO Escrow contemplated in paragraph 1.a. herein) for unpaid attorneys' fees and unreimbursed expenses incurred relating to the SilkRoad, Inc. Delaware Litigation. *The DePasquale Trust, Wells Fargo and BankFinancial do not release any liens upon or claims to*

---

[20]  Compl. ¶ 11.

[21]  *Id.*  After that payment was applied, Sperling's accounts receivable for its attorney's fees in the SRI litigation was reduced to $729,914.

[22]  Trust's Mot. to Stay ¶ 17.

> *the SilkRoad Inc. Delaware Settlement, including with respect to any proceeds Filipowski, SRE or any others are to receive from the settlement, and reserve all rights to object to and oppose any Sperling claim for a lien* or right to payment of any kind or nature of attorneys' fees and expenses as set forth above related to the SilkRoad Inc. Delaware Settlement and the Sperling SilkRoad, Inc. Liens and any other liens and claims that Sperling has or may have with respect to the amounts owed to SRE and/or the other beneficiaries of the SilkRoad, Inc. Delaware Settlement.[23]

Upon entry of the Illinois Circuit Court's Order related to the Distribution Agreement, Sperling again, under the Illinois Attorneys' Lien Act, 770 ILCS 5/1, obtained an attorney's lien on any recovery due SRE from the SRI Note, in the amount of $729,914.[24]

### 3. *The SRI Note Becomes Payable*

In September 2021, SRI notified SRE, Sperling, the Trust, and other potentially interested parties that a change of control of SRI had occurred, thus triggering distribution of the SRI Note.[25] All parties were provided with an escrow agreement related to the change of control transaction and the proceeds of the Note.[26]

Sperling notified SRI of its lien on the Note Proceeds, to which the Trust objected because the competing interests among creditors in the Note had yet to be determined.[27] The parties again engaged in negotiations to resolve the dispute in the

---

[23] Compl., Ex. 4 ¶ 1(d) (emphasis added).

[24] Compl. ¶¶ 15-16.

[25] *Id.* ¶ 20; *see also* Trust's Mot. to Stay ¶ 18.

[26] Compl. ¶ 20; *see also id.* at Ex. 8 (Escrow Agreement). The Escrow Agent is a Delaware corporation. *Id.*

[27] Trust's Mot. to Stay ¶¶ 19-20.

Cook County Circuit Court, with Sperling requesting additional time to respond.[28]

Instead of responding to the ongoing negotiations, Sperling initiated this instant lawsuit in Delaware, omitting the Trust as a named, interested party.[29]

B. **BACKGROUND AND PROCEDURAL HISTORY OF THE INSTANT LITIGATION**

1. ***Sperling v. SRI and SRE***

On November 17, 2021, Sperling filed its Complaint, petitioning to enforce its Illinois-based attorney's lien against the proceeds of the SRI Note.[30] Sperling avers it's entitled to *all* proceeds of the Note that are directly or indirectly payable to Mr. Filipowski because he pledged to Sperling all of his rights therein.[31]

SRI filed its Motion and Suggestion on the Record for Interpleader on January 26, 2022.[32] It requests Interpleader "to avoid the potential of multiple liability" related to the competing creditors' claims in the Note.[33] In addition to Sperling, the Trust and Mr. Filipowski have claims to the SRI Note.[34] Thus, adjudication of Sperling's claim without the involvement of these parties has the potential to create inconsistent obligations for SRI.[35]

---

[28] *Id.* ¶ 21.

[29] *Id.* ¶¶ 22-24.

[30] *See generally* Compl.

[31] *Id.* ¶ 19.

[32] SRI's Mot. and Suggestion for Interpleader, *Sperling & Slater v. SilkRoad, Inc. and SilkRoad Equity, LLC,* C.A. No. N21C-11-152-PRW CCLD (Jan. 26, 2022) (D.I. 5).

[33] *Id.* at 3.

[34] *Id.*

[35] *Id.* at 4-5.

SRI acknowledges its readiness and willingness to distribute the Note proceeds but cannot do so until a determination is made with respect to creditor priority. It has offered to deposit the funds with the Court until such a determination can be made.[36]

SRI also filed its Response and Counterclaim to the Complaint on January 27, 2022.[37] As a preliminary matter, SRI asserts three defenses: (1) Sperling failed to join necessary parties under Superior Court Civil Rule 19; (2) Sperling has failed to state a claim upon which relief can be granted; and (3) interpleader is required to avoid inconsistent or multiple liability related to the Note proceeds.[38] SRI placed the Note proceeds, totaling $3,038,760.47, in escrow pending resolution of the competing interests between SRE, Sperling, Mr. Filipowski, and the Trust.[39]

Sperling responded to the Interpleader suggestion on February 10, 2022.[40] It does not oppose SRI's motion; however, it does dispute that Mr. Filipowski and the Trust have claims to any portion of the Note proceeds.[41] Sperling contends the Trust's and Mr. Filipowski's putative claims arise indirectly via SRE rather than

---

[36] *Id.*

[37] SRI's Resp. to Compl. and Countercl., Cross-cl., and Third-Party Claims for Interpleader, *Sperling & Slater v. SilkRoad, Inc. and SilkRoad Equity, LLC,* C.A. No. N21C-11-152-PRW CCLD (Jan. 27, 2022) (D.I. 6).

[38] *Id.* at 12-14.

[39] *Id.* at 18.

[40] Sperling's Resp. to SRI's Suggestion for Interpleader, *Sperling & Slater v. SilkRoad, Inc. and SilkRoad Equity, LLC,* C.A. No. N21C-11-152-PRW CCLD (Feb. 10, 2022) (D.I. 9).

[41] *Id.* ¶ 3.

directly against the proceeds to be paid by SRI.[42]  Sperling agrees interpleader is appropriate "to determine entitlement to those funds efficiently in a single forum."[43]

Sperling docketed its Response to SRI's Counterclaim, Cross-Claim, and Third-Party Interpleader Claims on February 17, 2022.[44]

The Court granted the Interpleader on February 16, 2022, with the parties to submit a proposed order.[45]

### 2. *The Trust Enters the Litigation*

On February 24, 2022, a Notice of Competing Action was filed by the Trust.[46] It informs the Court that it filed a TRO against Sperling in the Circuit Court of Cook County, Illinois, and a mediation related to the TRO was scheduled.[47]  In light of the mediation that was scheduled for March 9, 2022, the parties asked this Court for an extension to submit a proposed Order for Interpleader.[48]

The extension was granted by the Court's Order on March 4, 2022.[49]

On March 15, 2022, the Trust docketed its Motion to Intervene[50] and its

---

[42] *Id.*

[43] *Id.* ¶ 4.

[44] D.I. 13.

[45] D.I. 12.

[46] D.I. 15.

[47] *Id.*

[48] D.I. 16.

[49] D.I. 17.

[50] D.I. 18.

Motion to Stay Interpleader Order or Alternatively, to Reconsider Entry of Order.[51] The identical Motions detail the parties' lengthy history, the Illinois litigation, and the independent attempts to settle the priority dispute of the SRI Note.[52] The Trust claims it only became aware of this litigation when SRI filed its Interpleader motion.[53] That filing prompted the Illinois TRO and the later mediation in Illinois.[54] The Trust was unable to file a timely response to SRI's motion because it received notice *after* the Order granting the same had already been entered.[55]

The Trust asks the Court to allow intervention[56], or in the alternative, stay the proceedings until the Court can hold a hearing to determine proper venue, or rescind its order granting the Interpleader Motion until further argument can be heard.[57]

SRI Responded to the Trust's two motions on March 30, 2022.[58] It does not oppose intervention and agrees the Trust should be joined.[59] It also takes no position

---

[51] D.I. 19.

[52] *See generally* Mot. to Stay. The minor differences between the two motions are the forms of relief requested and the referenced exhibits therein are only appended to the Motion to Stay.

[53] *Id.* ¶¶ 23-26.

[54] *Id.* ¶ 26.

[55] *Id.*

[56] Mot. to Intervene ¶¶ 30-32.

[57] Mot. to Stay ¶¶ 30-32.

[58] SRI's Resp. to Trust's Mots. to Stay and Intervene, *Sperling & Slater v. SilkRoad, Inc. and SilkRoad Equity, LLC,* C.A. No. N21C-11-152-PRW CCLD (Mar. 30, 2022) (D.I. 21).

[59] *Id.* ¶ 1.

concerning which court is the proper venue for this dispute.[60]  Should litigation continue in Delaware, however, SRI posits interpleader is appropriate.[61]

Sperling's Response to the Trust's two motions was filed on March 30, 2022.[62]  Sperling urges the Court to deny the Trust's motions because:

1) Intervention is unnecessary as SRI named the Trust as a defendant to its third-party claim for interpleader and Sperling did not object.

2) The Trust's Motion to Stay cites no supporting law, nor can it satisfy the factors for a stay.

3) Sperling denies that there is a competing action or even a prior action involving the same parties and subject matter.

4) There is no basis to transfer this action to Illinois as the Trust says it will request.

5) And, the Trust doesn't have a direct interest in the proceeds of the SRI Note, and thus, doesn't have standing to object to Sperling's lien on the proceeds of the Note.[63]

In short, Sperling argues the Trust has no valid claim to the SRI Note because SRI's only obligation under the Note is to pay SRE.  Thus, it is SRE's obligation to pay Mr. Filipowski and the other plaintiffs in the SRI Action.  And since the Trust is only a creditor of Mr. Filipowski personally, Delaware law precludes the Trust from collecting from SRE by way of Mr. Filipowski's status as a member of the

---

[60]  *Id.* ¶ 3.

[61]  *Id.*

[62]  Sperling's Resp. to Trust's Mots. to Stay and Intervene, *Sperling & Slater v. SilkRoad, Inc. and SilkRoad Equity, LLC,* C.A. No. N21C-11-152-PRW CCLD (Mar. 30, 2022) (D.I. 22).

[63]  *Id.* ¶ 1.

LLC.[64]  And even if the Trust could collect, Sperling's lien prevails because of its representation of SRE in connection with the SRI litigation.[65]

## II.     APPLICABLE LEGAL STANDARDS

### A.  DELAWARE SUPERIOR COURT CIVIL RULE 22 – INTERPLEADER

Under Superior Court Civil Rule 22, parties are "required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability."[66]  "Double or multiple liability" has been interpreted to mean "exposure to double or multiple liability for a single liability."[67]

The rule also provides:

> It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that the plaintiff is not liable in whole or in part to any or all of the claimants.  A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim.[68]

---

[64]  *Id.* ¶¶ 18-19.

[65]  *Id.* ¶ 19.

[66]  Del. Super. Ct. Civ. R. 22(1).

[67]  *United Servs. Auto. Ass'n Prop. & Cas. Ins. v. Lacy*, 1991 WL 68905, at \*2 (Del. Super. Ct. Apr. 11, 1991) (citing *Graham v. Nat'l Bank of Smyrna,* 118 A. 325, 326 (Del. Super. Ct. 1922) ("The office of interpleader is not to protect a party against a double liability but against a double vexation for the same liability.")).

[68]  Del. Super. Ct. Civ. R. 22(1).

Too, this Court has emphasized that the rule is not so strict to require that the party seeking impleader *must* be facing double liability, but it's enough that it *might*.[69]

### B. DELAWARE SUPERIOR COURT CIVIL RULE 24 – INTERVENTION

Superior Court Civil Rule 24 permits a party to intervene into a pending matter either by right or permission upon a timely application. Intervention as a matter of right permits a party to intervene when (1) an unconditional right is granted by statute; or, particularly relevant here, (2) "when an applicant claims an interest relating to the property or transaction which is the subject matter of the action and applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."[70]

In analyzing a motion to intervene under Rule 24(a), "the Court must focus on the particular factors and procedural posture of the application."[71] The third-party applicant "must have: (a) timely moved to intervene, (b) in order to protect a property interest at issue in this case, (c) that would be impaired by the disposition of this action, (d) under circumstances where their interests are not adequately represented by Defendants."[72]

---

[69] *Eastern Com. Realty Corp. v. Fusco*, 1989 WL 63965, at *2 (Del. Super. Ct. May 24, 1989).

[70] Del. Super. Ct. Civ. R. 24(a).

[71] *Wilmington Trust Co. v. Lucks*, 1999 WL 743255, at *6 (Del. Super. Ct. June 18, 1999).

[72] *Carlyle Inv. Mgmt., LLC v. Moonmouth Co. S.A.*, 2015 WL 778846, at *3 (Del. Ch. Feb. 24, 2015).

## III.   DISCUSSION

### A. INTERPLEADER AND INTERVENTION OF THE SAME PARTY CAN CO-EXIST

The Court's earlier Order Granting Interpleader does not moot the Trust's Motion to Intervene.  Arguably, a claimant may have different rights and obligations as an intervening and interpleaded party.

### 1.   *Interpleader is Proper and the Court's February 16 Order Will Not be Disturbed.*

Regardless of the merits of the competing claims, interpleader is appropriate when a stakeholder "legitimately fears multiple liability directed against a single fund."[73]  SRI's is thus the precise situation contemplated by this Court's Interpleader Rule.  SRI faces the possibility of, and is legitimately wary of, some additional liability because if it incorrectly distributes the Note to Sperling or the Trust—depleting the funds to the other party's detriment—it might likely be liable to the rightful recipient for damages.

So, interpleader is proper here. Because this Court has already granted SRI's interpleader request, the need to consider whether to dismiss the case or rescind its earlier Order is unnecessary.  Nor does the Court find that any of the usual criteria that might counsel a stay of a matter have been met.  All parties are now properly before this Court and they seems little to gained by further delay.  That said, with the newest developments in this matter, the parties should provide the Court with an amended form of Interpleader Order.

---

[73]   *John v. Sotheby's, Inc.*, 141 F.R.D. 29, 33 (S.D.N.Y. 1992).

**2.** ***Interpleader Does Not Moot the Trust's Request to Intervene Because the Existing Parties Do Not Adequately Protect the Trust's Interests.***

"[A] traditional basis for intervention [as of right] derives from interpleader practice; when a number of persons possess claims to a fund which are or may be mutually exclusive, intervention is allowed a claimant."[74]  As all parties agree— while it may seem somewhat redundant because SRI has been permitted to institute interpleader of the Trust—the Trust, as a potential claimant of Note proceeds, may also intervene as a matter of right in this action.

The Trust meets the Rule 24 intervention requirements.  Its motion was docketed within one week of receiving notice of SRI's Interpleader submission.[75]  It is therefore timely.  Its proper interest in the SRI Note proceeds is the sole subject matter of this litigation.  Indeed, without the Trust's participation, its ability to protect its interest in those proceeds will be impaired or impeded as neither SRI nor Sperling adequately represent the Trust's purported interest in the Note proceeds.

Though SRI disclaims any direct interest either way, Sperling's interests are directly adverse to the Trust's.  And, at very least, it's fair to question why the Trust was not made a party to this lawsuit given the years-long priority fight over the Note—including simultaneous negotiations over the same claim in Illinois.  No doubt, the Trust meets the threshold requirements of Rule 24.[76]

---

[74]  *Id.* at 34 (quoting *Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.,* 386 U.S. 129, 146 (1967)).

[75]  Del. Super. Ct. Civ. R. 24(a); *see also Carlyle Inv. Management, LLC*, 2015 WL 778846, at *3.

[76]  Del. Super. Ct. Civ. R. 24(a).

## IV. CONCLUSION

The Trust's Motion to Intervene is **GRANTED** and the Trust's Motion to Stay or Rescind the Interpleader Order is **DENIED**. The parties shall provide the Court an amended Interpleader Order on or before April 11, 2022.

To the extent Sperling has requested via its responses that the Court now issue judgment with respect to its rights and Attorney's Lien in the SRI Note, that must be **DENIED**. The Court can reach no decision on the merits at this point in the litigation.

Given the seemingly still-active, somehow related Illinois litigation, there is little doubt the Court will be called upon soon to determine whether this case should be dismissed or stayed under the *forum non conveniens* doctrine (or some other basis) in lieu of litigation in the Cook County Circuit Court.

To that end, the parties shall submit on or before April 25, 2022, a stipulated factual and procedural history of their prior litigation, negotiations, settlements, distributions and/or entry of statutory liens. Such a stipulated history of the facts and prior litigation in no way disadvantages any one party but gives all a mutual starting point and will significantly assist the Court to efficiently adjudicate the questions expected to be posed in *this* case.

Upon docketing of that stipulated history, the deadlines for any required answers, responses, preliminary motions, or objections shall begin to run.

**IT IS SO ORDERED.**

_____
Paul R. Wallace, Judge

cc: All Counsel via File and Serve